29    99
1ap106

ELIZABETH W. GREENWOOD, INDIVIDUALLY AND AS EXECU-TRIX, ETC., OF SIMON L. GREENWOOD, DECEASED, RESPOND-ENT, v. GEORGE L. MARVIN AND ELIZABETH S., HIS WIFE, APPELLANTS, IMPLEADED WITH LE GRAND MARVIN, RESPONDENT.

*Report — when it will be set aside because of the misconduct of the referee — what acts are not a waiver of the right to make a motion for such relief.*

The referee in this action, after the case had been finally closed and submitted to him, and before he had decided it, applied to the parties and their attorneys, verbally and by letter, to have his fees fixed at a sum largely in excess of what he would be entitled to receive if they were determined by the statutory rates, and sought to procure the execution of a stipulation to that effect. The plaintiff and one defendant seemed willing, while the other defendant refused, to execute it. Subsequently the referee notified the defendant who had expressed a willingness to execute the stipulation that he would deliver the report to him on receipt of a sum greater than his statutory fees. Thereafter a bond and mortgage were given to the referee by the said defendant and his son to secure the said fees, and the report was delivered to him. It was claimed that while the reference was pending the referee had expressed an opinion favorable to the defendant, against whom he finally decided.
*Held,* that the court properly set aside the report and the judgment entered thereon.
The referee's report was filed July 7, 1881, and judgment was entered thereon on July 12, 1881. In August following, notice of a motion to set aside the report because of the alleged misconduct of the referee was served. Thereafter, and on August twentieth, notice of an appeal from the judgment was served. September 2, 1881, the motion to set aside the report of the referee was denied for the want of proper papers. In February, 1882, the motion was renewed and granted.
*Held,* that neither the denial of the first motion, the service of the notice of appeal nor the delay deprived the defendant of his right to move to set aside the report.

APPEAL from an order of the Erie Special Term, made on the 17th of June, 1882, granting a motion made in February, 1882, to set aside the report of a referee and vacate the judgment entered thereon. Plaintiff recovered $361, and an account was stated between George L. Marvin and Le Grand Marvin, and the title to certain real estate was determined to be in George L. Marvin. The referee received $3,640 for fees. The referee says in his affidavit, viz.: "A more tedious, vexatious and *exasperating* litigation I think I may safely say was never known. The amount involved was large, being at least $100,000, and the question is difficult and extraordinary. The difficulties attending the trial it is impossible to describe. The case seemed interminable. * * * I may say that it is more than likely that I did say to Le Grand Marvin and to Vedder and to Kingston that it was to Le Grand's interest to close the case. At the time I believed * * * it was, because it became apparent to me many months before the submission that no further material testimony could be produced on the part of the plaintiff. It was for the interest of all parties that the litigation be terminated. Finally the case was closed and submitted February 19, 1881, except that the privilege was reserved to the parties to submit written briefs and requests to find, etc. The case was finally submitted on that day. At that time the case had been pending before me a little more than four years. * * * There were about 296 days on which I heard or was prepared to hear the case. To that may be added nearly every day from April 1st to July 1st, 1881, the time I spent in making my report; for it is true that for three months I labored almost incessantly on this case. * * * I think it was natural that as I approached the end of this great task I should grow anxious about compensation. I did speak to Mr. Andrews (counsel for George L.) and Mr. Vedder (counsel for plaintiff and Le Grand) about it, and there was some indefinite talk." He then states that after he arrived at Colorado Springs, Col., he wrote to both Mr. Andrews and Mr. Vedder about the matter. "I had, before writing, reflected upon the subject and arrived at the conclusion that I should be paid $3,000 in addition to what I had already received, making a sum total of $3,640. I think that I so wrote, and suggested that if that sum was satisfactory to the parties that they fix upon it and provide for its payment." He

received answers that nothing had been done. He says, viz. : " I wrote again, urging *that something* be done. Nothing however was done, as I found when I returned April 1st, 1881. I saw Vedder and spoke of this matter."

Nothing was done until May first, when the referee drew a stipulation, " to be signed by the parties, fixing the amount to be paid at $3,000." He submitted that to Vedder, and he drew another one and handed it to the referee to hand to Mr. Andrews to sign, and Vedder was to present it to Le Grand to sign.

The referee did on the following day (May second) submit it to George L. and to Mr. Andrews, and they expressed a preference for the one the referee drew. The referee took the papers back to Vedder and frequently after asked Vedder if Le Grand had signed the stipulation.

The referee's affidavit says : " Finally he returned the papers to me in the same envelope in which they were inclosed when I left them at his office, and informed me that Le Grand had declined to sign them or either of them. \* \* \* The report was ready for delivery July 1, 1881."

The referee notified George L. " that it would be delivered to him on payment of $2,810, the balance remaining unpaid." About the 7th of July, 1881, George L. and his son Percy arranged the fees by delivering a bond and mortgage to the referee, and " the report was delivered to them."

Affidavits were read below tending to show that pending the reference the referee declared his opinion to be favorable to Le Grand on an important branch of the case, and that he subsequently changed his mind and determined that branch of the case in his report adverse to Le Grand and favorable to George L. and adverse to the plaintiff.

Many other facts appear in the moving papers as to conversations of the referee with the parties separately, and with counsel separately, about the trial, the course and management of it, and the questions involved, and tending to show that Mr. Andrews was suggested to George L. as a proper attorney to employ, and that thereafter the defendant, George L., employed Andrews as attorney, and that he, to a large extent, conducted the litigation in behalf of George L. before the referee.

*E. B. Vedder*, for the plaintiffs.

*Leroy Andrews* and *E. C. Sprague*, for George L. Marvin and wife, appellants.

*Adelbert Moot*, for Le Grand Marvin, respondent.

HARDIN, J.:

Appellants invoke the rule that motions for irregularity in practice, based upon technical objections to proceedings had, must be taken promptly and before other steps are taken in the action. Such a rule has been applied in regard to the usual modes of procedure. (*Persse & Brooks Paper Co.* v. *Willett*, 14 Abb., 119; *Low* v. *Graydon*, Id., 443; *Lawrence* v. *Jones*, 15 Id., 110.) Such motions must be made before taking other steps in the action. (*Strong* v. *Strong*, 1 Abb. [N. S.], 233; *Jones* v. *U. S. Slate Co.*, 16 How., 129.)

*Patterson* v. *Graves* (11 How., 91) does not aid the appellants. There the motion was to set aside the report of a referee, because the report did "not set forth the material facts found upon the issues passed upon by the referee, or what issue he did pass upon, or what facts he did find." BOWEN, J., said, the motion was based upon an alleged irregularity, and that a delay of seven months was an answer to it. The ground of the motion in this case takes the motion out of the rule laid down in the cases cited by the appellants. Besides, the affidavits at the Special Term satisfactorily excused any laches imputable to the moving parties.

The first notice of motion was for September 2, 1881, and though then denied for want of proper papers, it was afterwards renewed, we must assume, by leave of the court properly given, and the delay satisfactorily excused. Nor did the service of the notice of appeal from the judgment, subsequent to the first notice of motion and prior to the second notice of motion, cut off the right of the respondents to sustain the motion to set aside the report of the referee for alleged misconduct.

By section 3296 of the Code of Civil Procedure, the fees of a referee were limited to six dollars per day. That section went into effect 1st September, 1880 (see § 3356 of Code of Civil Procedure), and the referee, at the time when the cause was submitted to him

in February, 1881, was only entitled to an allowance of fees as specified in section 3296.

A different compensation might, in accordance with that section, have been fixed, by the consent of the parties, at or before the commencement of the trial or hearing, if such consent had been "manifested by an entry in the minutes of the referee or otherwise in writing." No such consent had been given, as the referee well knew, when he commenced his efforts to have the parties stipulate for his compensation.

It must be assumed that he well understood the provisions of the section from which we have quoted, and that he was aware that the section had been somewhat strictly pursued and construed by the courts. (*Marke* v. *City of Buffalo*, 87 N. Y., 188; *First National Bank* v. *Tamajo*, 77 id., 478.) ANDREWS, J., said, in the case last cited, that "the statute wisely, we think, requires a *formal written agreement* between the parties before either can be subjected to the payment of referee's fees beyond the prescribed rate."

To obtain such an agreement as would give an increased rate for beyond what the statute had prescribed, the referee in the case before us set out and continued his efforts while in Colorado, and repeated and carried them on after his return and by the stipulation which he drew on Sunday, May first, he expected to overcome the force of the statute we have quoted if the same should be signed by all the parties. Finally his efforts failed, as Le Grand refused to accede to the request of the referee.

Without saying that the referee acted in actual bad faith with an intent to procure to himself greater fees that he had or might earn, we must condemn his conduct in regard to the compensation to be allowed to him. The statute we may well suppose was aimed at all rates of compensation above six dollars per day, not given by the consent of the parties — the free consent — at or before the commencement of the trial or hearing.

Parties solicited by a referee, after the trial was begun, to give an enhanced fee to a referee, above and beyond that named in the statute, might be delicate about refusing, lest the refusal should prejudice the party refusing, in the mind of the referee. Such efforts as the referee by his own affidavit admits (not to say those established by other proofs) should not be encouraged or sanctioned.

The policy of the law in guarding judicial trials from evil and the appearance of evil as well, require that such conduct as has been disclosed should be condemned, and that a report following such conduct should be set aside and the parties remitted to another trial. (*Yale* v. *Gwinits & Casler*, 4 How., 253; *Roosa* v. *S. & W. T. Co.*, 12 id., 297; *Gray* v. *Fisk*, 42 id., 135; *Livermore* v. *Bainbridge*, 44 id., 262; *Carrol* v. *Lufkins*, 29 Hun, 17.)

Confidence in the purity of the administration of the law cannot be maintained if such conduct be tolerated, and reports are allowed to stand, made by referees who start negotiations and stipulations for extra statutory fees, after a case has been submitted to them.

That the referee asked no more than he earned, that he received no more than he earned, furnishes no answer to the charge of impropriety. A new trial in this case may be expensive and may not produce a different result. But it is better that there be expense and delay in this case, than that an improper precedent be made.

Referees ought, like jurors, to be vigilant to avoid evil, to avoid taking a line of conduct which may affect their freedom of mind and neutrality in the cases under consideration. *Ex parte* treaties and conversations with either party as to any fact, point or fee ought to be avoided- Suitors have a right to an unbiased tribunal approaching the delicate duty of determining the facts and law of a case, uninfluenced by any solicitude or efforts to secure extra fees.

The cases to which reference has been made indicate how careful courts have been to see to it, that a decision be not allowed to stand in any case where it may have been reached by any consideration, not arising from the merits of the case as presented by the evidence and law of the case.

The order of the Special Term ought to be affirmed, with costs and disbursements.

Smith, P. J., and Barker, J., concurred.

Order affirmed, with ten dollars costs and disbursements.